# EXHIBIT A

State v. Gregory Donnell Morgan
MNCIS No: 27-CR-26-9656
PCN: 26A01457
CCN: 26401115
*911 Call*

## 911 CALL - Thursday, February 5, 2026 - 16: 22 and 50 seconds

**DISPATCH:**   9 1 1 State Patrol.

**RICHFIELD:**   Richfield with a transfer.

**CALLER:**   Hi.

**DISPATCH:**   Hi, thank you. Go ahead Caller.

**CALLER:**   I just had a guy, I just had a guy, uh aim his gun at me, uh, 62 East. He's on a Ford Expedition. What is that license plate?

**OTHER:**   (Inaudible)

**CALLER:**   7061PW Ford Expedition 2020ish.

**DISPATCH:**   What color?

**CALLER:**   Black. Yeah, he just-

**DISPATCH:**   Was it (Inaudible)

**CALLER:**   -aim a Glock at my face. Uh, yeah, Black male, beard.

**DISPATCH:**   Okay. And the handgun, was it black chrome?

**CALLER:**   Uh, I wanna say I saw some color on it, but it was, yeah, I think it was a black one.

**DISPATCH:**   Okay. And you separated yourself from the other vehicle, correct?

**CALLER:**   I'm behind him directly right now, but with, with a distance.

**DISPATCH:**   Okay. Yeah-

**CALLER:**   He is.

**DISPATCH:**   Um, you said-

**CALLER:**   Yeah.

**DISPATCH:**   -eastbound 62, what's the next, uh, exit you're coming up on?

**CALLER:**   Next exit is, uh, Cedar.

**DISPATCH:**   Okay. Can I get your name and phone number?

1

State v. Gregory Donnell Morgan
MNCIS No: 27-CR-26-9656
PCN: 26A01457
CCN: 26401115
*911 Call*

**CALLER:** Yeah, my name is VICTIM 1 ▮▮▮▮▮▮▮▮▮▮.

**DISPATCH:** ▮▮▮ I'll have one of my troopers give you a phone call. We'll go over the incident with you and, um, if you just wanna keep an eye on your phone for a block or a restricted number, that's gonna be them, okay?

**CALLER:** Okay, sounds good.

**DISPATCH:** Thanks.

**END OF TRANSCRIPT**

State v. Gregory Donnell Morgan
MNCIS No: 27-CR-26-9656
PCN: 26A01457
CCN: 26401115
*Gun Pointing Incident…1642*

Q = Trooper Tierney
A = Victim 1
A2 = Victim 2

## Statements of Victim 1 & Victim 2

**Q:** Is this Victim 1

**A:** Yes.

**Q:** Hi, this is Trooper Tierney with the State Patrol.

**A:** Hi.

**Q:** Hi. I understand that you, uh, had, uh, an experience on the highway not that long ago. Is that correct?

**A:** Correct.

**Q:** Okay.

**A:** (Inaudible) gave you the wrong license plate too.

**Q:** Okay. All right.

**A:** Now that we look at the video here.

**Q:** Okay. Um, couple things. Um, can I get your full name, first, middle, and last?

**A:** Yes. Uh, Victim 1

**Q:** Hold, hold on.

**A:** Victim 1 .

**Q:** Hold on one second.

**A:** No problem.

**Q:** Middle name Victim 1

**A:** Yep.

**Q:** Okay. And last name?

1

State v. Gregory Donnell Morgan
MNCIS No: 27-CR-26-9656
PCN: 26A01457
CCN: 26401115
*Gun Pointing Incident…1642*

**A:** Victim 1 as in Victim 1 in the middle there.

**Q:** Okay. And your date of birth?

**A:** Victim 1

**Q:** Do you have, um, ▮▮▮▮ driver's license?

**A:** Correct. Okay.

**Q:** All right. So can you, um, describe what happened, where you were, where you first saw the vehicle? Um-

**A:** Um, so I, I'll be honest, I started it 'cause this dude was riding the shoulder. Um, it's only like 50 in the shoulder. Uh, it was where 62, oh man, let me, let me get you an exact, I just parked at the Mall of America is where I was heading. One second here. Yeah, it's like where 62, uh, and 35, 62 East and 35, um-

**Q:** 35 W or 35 E?

**A:** 35 W.

**Q:** Okay.

**A:** Yeah. And uh, yeah, he was just riding the shoulder. So I, I, I cut him off a little bit. No.

**Q:** Okay.

**A:** Like, dude, you can't just ride the shoulder. So that was my bad a little bit. But, uh, yeah, so I cut him off and then, uh, he like pretty much immediately just rolled down his window and flashed his whatever fucking pistol at me.

**Q:** Okay.

**A:** And I did not flash mine back.

**Q:** Okay. Um, so which direction were you heading on 62?

**A:** East.

**Q:** Heading East on 62. Near 35-

**A:** Yeah.

**Q:** -W?

**A:** Yep.

State v. Gregory Donnell Morgan
MNCIS No: 27-CR-26-9656
PCN: 26A01457
CCN: 26401115
*Gun Pointing Incident…1642*

**Q:** Okay. What lane were it, were you in the right lane?

**A:** Yeah, it, it was a one lane. One lane.

**Q:** Okay.

**A:** Where, where it happened.

**Q:** Gotcha. So you drove onto the shoulder to kind of partially cut him off?

**A:** Yeah yeah. Yeah yeah.

**Q:** Okay. Um-

**A:** And then, well, and I stayed on his tail, like he clearly wasn't in a hurry 'cause he ended up exiting and it was like roughly where I had to exit too. Um, and he like pulled over and waited for me. So I had to, Victim 2 with me, so I, didn't like this.

**Q:** Okay.

**A:** So I had to drive into, drive, I don't even know, I think it was a no left turn, but I, I got out of there 'cause he clearly wanted to confront me.

**Q:** Okay.

**A:** But, uh, I don't know if you want more info on his license plate. I got an actual, it's a Utah plate.

**Q:** It's a Utah plate. Okay. All right. Just give me a couple minutes here. Try to figure out what else I need from you. Um, so when you cut him off, did you get back into the lane of travel and then he still pulled up, uh, along the shoulder? Is that how that happened?

**A:** He, he, he stayed in the shoulder-

**Q:** Okay.

**A:** -while brandishing his Glock or Sig or whatever the fuck it was.

**Q:** Okay. What, what made you think that it was a, a pistol?

**A:** Uh, because I have, I have one.

**Q:** Okay.

**A:** And it was aimed at my face.

3

**Q:** Okay.

**A:** It was, it was very clear. I wanna say there was a red dot sight on it possibly, but I don't know. I more focused on driving. Yeah.

**Q:** Okay. Did you get a good look at this person?

**A:** Yeah.

**Q:** Okay. Would you be able to pick 'em out, out of a, uh, like if you saw a photo of him, do you think you'd be able to, to identify him?

**A:** Um, I, I think so. I mean, I don't know.

**Q:** Okay.

**A:** It's hard for me to give a full guarantee on, but yeah.

**Q:** Okay.

**A:** I would say so.

**Q:** All right. All right. What's your license plate?

**A:** Hold on, let me get out. Mine is, uh, Victim 1

**Q:** Victim 1 plate?

**A:** Yes. Okay.

**Q:** And what kind of vehicle is that?

**A:** This is a, uh, ▋ Cadillac Deville.

**Q:** Okay. White in color?

**A:** Yes.

**Q:** Okay. Are there any distinguishing features of it? Any window stickers-

**A:** Yeah.

**Q:** -anything like that?

**A:** Uh, yeah, I got a,

4

State v. Gregory Donnell Morgan
MNCIS No: 27-CR-26-9656
PCN: 26A01457
CCN: 26401115
*Gun Pointing Incident…1642*

**Q:** ████████████████████████

**A:** ████████████████████

**Q:** It may sound like some, um, silly questions, but it might help us be able to track, track you and this other vehicle down on camera. Um-

**A:** No problem.

**Q:** All right. And what was, what was the license plate of the other vehicle?

**A:** My, Victim 2 has that, so T 0 8. Okay. Yeah, T 0 8 1, T as in tango. Um, and then 1 Papa Whiskey.

**Q:** You said that was a Utah plate?

**A:** Yeah.

**Q:** Okay. And my notes are saying that it was, uh, Expedition?

**A:** Yep. Ford Expedition roughly 2020 plus, I wanna say.

**Q:** So newer?

**A:** Yeah, newer, definitely newer.

**Q:** What color?

**A:** Black.

**Q:** Black. Okay. Any distinguishing features, roof rack stickers, heavy tint, anything like that?

**A:** Uh, possibly a broken roof rack. (Inaudible) on the driver's side and the driver's side brake light is out.

**Q:** It's out or um, like damage?

**A:** Uh, it doesn't, it, uh, lights out.

**Q:** Okay. All right. So from the first time you saw him, you were, um, eastbound 62, near 35 in the single lane?

**A:** Yeah.

**Q:** And where did you disengage?

State v. Gregory Donnell Morgan
MNCIS No: 27-CR-26-9656
PCN: 26A01457
CCN: 26401115
*Gun Pointing Incident…1642*

**A:** That's an excellent question. Um, one second. ▮ was, oh, so Crosstown, I think Crosstown Service Road right directly north of the airport.

**Q:** Okay.

**A:** Yeah, because then, yeah, I took the Crosstown exit and I turned left. He turned right.

**Q:** And you felt like he was waiting for you?

**A:** Oh yeah, a hundred percent. There was nobody ahead of him. He turned right and parked like just past the stop sign and that's when Victim 2 started crying a little bit justifiable.

**Q:** Yep.

**A:** Um, and I turned left and just got out there.

**Q:** All right. Is this a good phone number for you?

**A:** Yeah.

**Q:** Okay. I know, I'm sorry if I'm kind of bouncing all over the place. I'm trying to, um, look at some, some documents here and trying to get what I need from you. Um-

**A:** Yeah, no problem.

**Q:** Are you still in Victim 1

**A:** Yeah.

**Q:** Okay. That's where-

**A:** We're moving soon, but yeah.

**Q:** Okay. But that's where you get all your mail currently?

**A:** Yeah.

**Q:** Okay. Alright. Do you have an email address I can get from you?

**A:** Uh, yeah. First name, last name or first name first, sorry. Victim 1 and then ▮ So first name, middle name, last initial.

**Q:** Okay.

**A:** At Gmail.

**Q:** Were you able to get anything on, on video? Did you have a dash camera? Uh, was your-

**A:** Nothing no, not on this car. I don't have a dash cam, but we do-

**Q:** No.

**A:** -have like just video of him driving. Nothing, nothing incriminating.

**Q:** Okay. Just, so just the driving-

**A:** (Inaudible) dash cam pretty soon here.

**Q:** Okay. So just the driving conduct, you, you kinda got on camera?

**A:** Uh, him driving yes, but not of the initial, his incident or anything.

**Q:** Okay.

**A:** Nothing helpful basically, other than his vehicle.

**Q:** Okay. Can you describe this individual?

**A:** Um, yeah, black male, beard and thirties to forties, um, oh, oh, maybe like, uh, 200 pounds or I don't fucking know, and rounder face. Uh, uh-

**Q:** Um-

**A:** Can't tell.

**Q:** What was he wearing if you could see him?

**A:** A black (Inaudible) I say, black T-shirt.

**Q:** Okay.

**A:** Pretty sure. Yeah. Can't help as much on that front.

**Q:** Okay.

**A:** Yeah, I mean, if I saw him I would definitely, I would know, but-

**Q:** Okay. Was he the only, uh, occupant of the other vehicle as far as you can tell?

**A:** Um, yeah, Victim 2 says yes.

**Q:** Okay.

7

**A:**   I'm pretty confident as well.

**Q:**   All right. So how did you feel when you saw the firearm? Did you fear for your life? Feel threatened?

**A:**   Hmm, my, Victim 2 was a quick yes there.

**Q:**   Okay.

**A:**   Um, I, I guess I took it as a, a threat. Just a threat.

**Q:**   Okay.

**A:**   It, it wasn't like, I mean, I'm, I'm carrying as well.

**Q:**   Right.

**A:**   Um, and I didn't feel like I needed to pull it out personally. It was just kind of embarrassing if anything to me.

**Q:**   Okay.

**A:**   But it also was like, if that got this guy to threaten this, maybe he was trying to point it at me, I don't know. But yeah, I don't know.

**Q:**   All right. Are you able to put Victim 2 on the phone for me?

**A:**   Sure. Oh, Victim 2 is.

**A2:**   Hello?

**Q:**   Hello, this is Trooper Tierney with the state patrol. Um-

**A2:**   Hi, I, I'm Victim 2

**Q:**   Hi, uh, can I get your full name?

**A2:**   Uh, yeah, it's Victim 2 .

**Q:**   Okay.

**A2:**   Victim 2 .

**Q:**   Okay. And your date of birth?

**A2:**   Uh, Victim 2 .

**Q:**   Okay. Can I get your phone number?

State v. Gregory Donnell Morgan
MNCIS No: 27-CR-26-9656
PCN: 26A01457
CCN: 26401115
*Gun Pointing Incident…1642*

**A2:**    Uh, Victim 2 .

**Q:**    Do you have an email as well?

**A2:**    Uh, yeah, it's Victim 2 .

**Q:**    Okay. So can you kinda describe what, what you saw and how you felt?

**A2:**    Um, yeah, I kind of, I feel like it really happened so fast. I was just, I didn't really even know what was happening. We kind of just like veered into the, well, I saw this guy coming really, really fast down the shoulder, and then we kind of like veered to like slow him down and then he like slammed on his brakes and like, he rolled his window down and he pointed a gun like right at us. And then he just kinda like, tried to like speed away, but there was like traffic and then, yeah, we kind of just happened to like, follow traffic towards him, I guess. And then when we got to that turn, like we exited and he came to a stop sign. He stopped, and then he took a right and he stopped like right in the middle of the road to like, wait for us and I just started crying and, uh, then Victim 1 just took a left turn and we just left.

**Q:**    Okay. All right. Is there any other, um, identifying information that you could, um, describe the, the other party as? Um-

**A2:**    Um, I think he was, I think he had like a shaved head and that's probably the only thing I think I would add to, to the description.

**Q:**    Okay. Were you able to get video or pictures of anything?

**A2:**    Um, not of him. I just got like the back of his car driving.

**Q:**    Okay.

**A2:**    Away, like with his license plate, but you can't really see him.

**Q:**    Okay. All right. And so that's on your phone?

**A2:**    Yeah.

**Q:**    Okay. Are you able to get text messages at this number?

**A2:**    Yeah.

**Q:**    Okay. So I'm gonna send you a link. If you could just upload whatever video or photos you have of the incident, as minor as you may think they are, they may help in the investigation. Um-

**A2:**    Okay.

9

State v. Gregory Donnell Morgan
MNCIS No: 27-CR-26-9656
PCN: 26A01457
CCN: 26401115
*Gun Pointing Incident…1642*

**Q:** So just do that. Um, I know that you stated that you felt threatened. Is that still accurate?

**A2:** Uh, yeah, I would say like, it definitely felt threatening. It was really scary.

**Q:** Yeah.

**A2:** To just have like a gun pointed at us.

**Q:** Yeah, definitely. All right. Um, you can hand me back to ▮Victim 1▮ now.

**A2:** Okay.

**Q:** Thank you for, thank you. Yeah, thank you for everything.

**A:** Uh, I'm here.

**Q:** All right. Um, I'm gonna try to follow up with, uh, with this person. If we need anything more from you, we'll give you a call. This may be forwarded to my investigators, so they may be calling you, emailing you, asking you more questions. Um, and I'll try to follow up with you as well if the, that's what they need from me. Um-

**A:** Okay.

**Q:** So do you have any other questions?

**A:** Um, I guess just out of curiosity, was it like a rental vehicle of some kind or?

**Q:** It is a rental, yes, it does come back as a rental vehicle.

**A:** So it could be those who won't be named?

**Q:** Um, not likely.

**A:** Not likely. Okay. Okay. Yeah, I mean, it doesn't matter. It's what it is.

**Q:** Okay. Yep. Like I said, I'll, I'll do my best and follow up and see if we can, uh, find this person and get them, um, held accountable for their actions.

**A:** I appreciate it sir.

**Q:** All right. You have a better day. Okay?

**A:** You too.

**Q:** All right. Bye-bye.

10

State v. Gregory Donnell Morgan
MNCIS No: 27-CR-26-9656
PCN: 26A01457
CCN: 26401115
*Gun Pointing Incident…1642*

**A:** Bye.

**Q:** No further evidentiary value.

**END OF TRANSCRIPT**

State v. Gregory Donnell Morgan
MNCIS No: 27-CR-26-9656
PCN: 26A01457
CCN: 26401115
*Initial call w.* [Victim]

Q = State Patrol Scott
A = Victim 1

## <u>INITIAL CALL WITH</u> Victim 1

**Q:** Hey, is this Victim 1

**A:** Yes.

**Q:** Hey, Victim 1 My name's Scott. I'm with the state patrol. How you doing?

**A:** I'm doing good. How are you?

**Q:** Hey, good. Say that, all that's, uh, all the paperwork from yesterday's calling, kind of falling out of my desk so I just, I wanted to follow up with you today on that.

**A:** Yeah, no problem.

**Q:** Yeah. Uh, so I understand you were, you're the driver of the Cadillac, is that correct?

**A:** Correct.

**Q:** Okay. Can you just kinda walk me through. Obviously I wasn't there, I didn't talk with you yesterday. Can you just kinda walk me through what happened?

**A:** Um, yeah, so, uh, driving east on 62 and, um, there's a guy flying down the shoulder and, uh, I made the not so bright decision to try to stop him, so I veered into the shoulder and, um, got him to stop. Uh, and then he went back into the shoulder, if I remember right. Um, and just kind of pointed his gun, his pistol at me, just kind of held it there for a little bit.

**Q:** All right. What'd he say?

**A:** I didn't roll down my window. I didn't hear anything he said.

**Q:** Okay. So your window was up?

**A:** Yeah.

**Q:** Okay.

**A:** Victim 2 was in the car, so I wasn't trying to start, start too much stuff there.

**Q:** Okay. So what lane were you in when this started?

1

State v. Gregory Donnell Morgan
MNCIS No: 27-CR-26-9656
PCN: 26A01457
CCN: 26401115
*Initial call w.* <span style="background:black">Victim</span>

**A:** It was a single lane.

**Q:** Yep. Oh, so just the single lane. Okay. So what side did-

**A:** Yeah.

**Q:** -what side was this vehicle, uh, coming up on you on?

**A:** On, on the right.

**Q:** Okay. Alright, so I'm trying to picture this in my head. What, what, where were you coming from? I'm trying to get exact picture in my head here.

**A:** Um, coming from just heading east on 62, towards right around the like 35 area, heading to, uh, Mall of America.

**Q:** Yep. So were you coming-

**A:** And-

**Q:** -were you coming like from Edina or were you coming down 35W-

**A:** Yeah.

**Q:** -from Minneapolis?

**A:** From Edina.

**Q:** Okay. So you're already on 62-

**A:** Correct.

**Q:** -you're coming east?

**A:** Yep.

**Q:** And then, correct me if I'm wrong, does it kind, it kind of merges there, doesn't it?

**A:** Yes, it was right before, uh, another lane of traffic merges from the right.

**Q:** Okay. And then that vehicle is coming on your right side?

**A:** Yeah.

**Q:** Okay. Correct me if I'm wrong, isn't that kind of a merge land there and not the shoulder?

**A:** No, no. Um, I have like a picture of where it happened on my phone actually.

2

State v. Gregory Donnell Morgan
MNCIS No: 27-CR-26-9656
PCN: 26A01457
CCN: 26401115
*Initial call w.* ███

**Q:** Okay.

**A:** Um-

**Q:** I know you sent it, you sent in a video, didn't you?

**A:** Yeah. And the video would've been after that uh, that shoulder.

**Q:** Oh, okay, gotcha.

**A:** Yeah, because that happened and then, and then he pointed his gun at me and then I told Victim 2 to record him.

**Q:** Right. Nope, nope. I can picture where you are now, the single lane. Uh, so they point, they point the gun at you, then obviously you take the video, then what happens?

**A:** Um, followed him for a brief time until we got to, uh, the Crosstown exit. Um, it's just like a little frontage road there, and he turned right, parked and, uh, that's when Victim 2 Victim 2 started crying and so I went left and just got outta there.

**Q:** Okay. All right. Uh, how many people were in this other vehicle?

**A:** I'm pretty sure just him.

**Q:** Okay.

**A:** I can't really, uh, fully confirm that. I'm pretty, pretty sure.

**Q:** Gotcha. Uh, did you see them, did he have anything else on, or what, what, what was, what was he wearing?

**A:** If I remember right, just a black T-shirt.

**Q:** Okay.

**A:** I wish I would've gotten a video of him. I, I'm gonna be investing in a dash cam.

**Q:** Yeah.

**A:** I have one in one of my cars, but I don't have one in this car, sadly.

**Q:** Did you see any, uh, police markings on the vehicle?

**A:** No. No. I mean, it, uh, trooper said it was a rental, but, uh, rental was in rough shape, had a broken roof rack and, uh, uh, driver, uh, brake light out.

**Q:** Okay. Uh, did you see any police in-, insignia inside the vehicle?

**A:** No.

**Q:** Like, did you see the, did you see any, like police clothing or badges on, on the, on the driver?

**A:** No, I didn't see anything.

**Q:** Okay. All right. Did you hear him yell-

**A:** I mean-

**Q:** Go ahead.

**A:** What was that?

**Q:** Did you hear him yelling anything?

**A:** He was yelling, but I didn't hear.

**Q:** Okay.

**A:** I didn't hear what he said.

**Q:** Okay. All right. Well, yeah. So, uh, uh, what is the video gonna, what, is the video gonna show anything different than what you're telling me?

**A:** No, the video is just us behind them.

**Q:** No, no, I mean, the video of the incident. 'Cause these other, these other people, they were law enforcement.

**A:** Okay. Ice, I'm guessing, or?

**Q:** What's that?

**A:** Were they like Ice or?

**Q:** Yeah, from a federal, uh, federal department.

**A:** Yeah.

**Q:** Yeah. Did you realize that at the time?

**A:** No.

**Q:** No. Did you think that at the time?

4

State v. Gregory Donnell Morgan
MNCIS No: 27-CR-26-9656
PCN: 26A01457
CCN: 26401115
*Initial call w.* █Victim█

**A:** Uh, after it happened, he, I mean, just, just that type of vehicle and the Utah plate, I was, he, he gave me a, a nice type of vibe.

**Q:** Sure. Uh, you didn't, did you see any Ice markings on the vehicle?

**A:** No.

**Q:** Any like Ice, like a vest or clothing?

**A:** No.

**Q:** No. Okay. All right. So yeah. Right. Kind of a, kind of a bad situation everybody kinda got themselves in. Right. As, as you-

**A:** Yeah.

**Q:** -you know, as, as you said, right, you shouldn't have cut him off. Right? You know? Yeah. He shouldn't have been passing on the shoulder. Right? But then that's how-

**A:** Yeah.

**Q:** -you know, that's how little things start. So I think, uh-

**A:** Yep.

**Q:** I think this is a good, uh, learning, learning incident for everybody. Uh-

**A:** That's what I was telling my dad yesterday. It's like, I just don't care anymore. I learned my lesson just to stay out of it.

**Q:** Yeah. Right. Because at the end of-

**A:** (Inaudible)

**Q:** Go ahead.

**A:** I mean it's like, uh, in hindsight, sure, he could have, the vehicle could have been in an emergency or something, but hindsight's 20/20.

**Q:** Yeah.

**A:** Um, clearly he wasn't because he had time to slow down and point a gun at me and then pull over. But, uh, yeah, that's, uh, wasn't my place to, uh, to enforce, uh, not driving on the shoulder like that.

**Q:** Yeah. Yep. Uh, so I guess, what are you looking to have done?

**A:** Nothing.

5

State v. Gregory Donnell Morgan
MNCIS No: 27-CR-26-9656
PCN: 26A01457
CCN: 26401115
*Initial call w.* <span style="background:black">Victim</span>

**Q:** Nothing. Okay.

**A:** I, uh, I mean, I, I looks like I got the Ice vibe from him at first, but, uh, it was more so I didn't, I didn't know that. So in my head, you got a crazy person driving down the road aiming guns at people. Like-

**Q:** Well-

**A:** -it doesn't seem like the type of individual that should, uh, be out there, but, but they are.

**Q:** Right. No, I think, uh, everybody learned from it. Uh, so I appreciate. Do you have any questions for me at all?

**A:** Um, I'm not, I'm not in trouble, am I?

**Q:** No, I think, like I said, we had, you know, everybody knows the mistakes that they made and, you know, I think moving forward, uh, everybody should maybe handle things differently. So, uh, I think you're in agreement with that. Are you not?

**A:** Yeah, I would, I would agree with that.

**Q:** Yeah. Yep. So no, nothing's gonna happen to you.

**A:** Okay.

**Q:** All right.

**A:** Is anything gonna happen to that guy or he's just, uh, carry on with his day?

**Q:** Yeah. Then carry on. You're not, you said you didn't want charge, you know, you wanted nothing to happen, right?

**A:** Yeah.

**Q:** And then at the end of the day, I kind of told, I told him the same thing I'm telling you. Right? Let's-

**A:** Yeah.

**Q:** You know, maybe some bad decisions were made and there was some other ways to handle it and, you know.

**A:** I'm guessing he doesn't have any video or anything?

**Q:** Yeah. There was no camera on at the time. That's correct.

**A:** Yeah. Well, it is what it is.

6

State v. Gregory Donnell Morgan
MNCIS No: 27-CR-26-9656
PCN: 26A01457
CCN: 26401115
*Initial call w.* ████

**Q:** Yeah. I mean, I don't think anybody's in disagreement as to what happened.

**A:** Yeah.

**Q:** You know, so again, you gotta, you know, I ask, I ask yourself, you know, put yourself in their shoes and, uh, you know, I'm not picking sides, you know, uh, like I said, but put yourself in their shoes. They got people cutting them, cutting them off all day, you know, trying to box 'em in, you know, they don't, they don't know who you are. You know, they don't know what, what your intent was. Right?

**A:** Yeah (Inaudible)

**Q:** Certainly looking back on it, right. Looking back on it, we can say, you know, well this is why, this is why. Right. But, you know, the, the one thing I've learned after 26 years of doing this is the brain, you know, the brain reacts and unfortunately, yeah, you and I can sit here today and have this conversation and you know, we can probably call 50 people and they might give us an hour long opinion on it, or they might, well, maybe this, maybe that. Right. But at the end of the day, right. You made your decision in a split second, as did they, you know, should you have cut 'em off? No. Should they have interacted with you? Probably not. You know.

**A:** I guess, I guess it's just like, I mean, he's, he's the one who was flying down the shoulder for no reason. He is the one who aimed a gun at me. I also have a gun on me. So he, he, I, I still think that he was the one that, and I guess this is all trivial, uh, no really benefit to this argument, but it's like I could have pulled a gun on him in defense and would I have had to prove that and that would've been a whole different story. It's just like, yeah, I don't know. I still think he's in the wrong and I do think he should have a brandishing charge, but I don't think that's gonna happen. Even if I tell you I want it to happen.

**Q:** And I don't decide that.

**A:** Yeah.

**Q:** You know. What I do need to know is if you want me to send this in for charging or review, I should say, if we do that right, it's you and Victim 2 who are gonna testify, not me. Right. I wasn't there.

**A:** Mm-hmm.

**Q:** I'm just simply the taxi driver that would send the reports in, you know, for review.

**A:** Yeah. Yeah. I guess probably not. I, uh, I enjoy my job and I don't want that to be put in harm's way by dealing with the government.

**Q:** Well, again, it would be my recommendation. Right. Just I know it, you know, it's hard, right. Being a Victim 1 we're, you know, we have Victim 1 and that's how we are, but both sides just, you know, take a breath and you know, go about our day.

7

State v. Gregory Donnell Morgan
MNCIS No: 27-CR-26-9656
PCN: 26A01457
CCN: 26401115
*Initial call w.* ███ Victim

**A:** Yeah. Yeah. I agree.

**Q:** So I appreciate this conversation and you know, I think everybody learned from it, like I said, so.

**A:** Sounds good. I appreciate the call.

**Q:** Alright. You take care.

**A:** Yep.

**Q:** Bye.

**A:** Bye.

**END OF TRANSCRIPT**

State v. Gregory Donnell Morgan
MNCIS No: 27-CR-26-9656
PCN: 26A01457
CCN: 26401115
*Follow-up call w.* [Victim 1]

Q = State Patrol Scott
A = Victim 1

## FOLLOW-UP CALL WITH Victim 1

**Q:** Hey, [Victim 1] this is Scott, uh, state patrol. We spoke yesterday.

**A:** Hey, how's it going?

**Q:** Yeah, good, good. Just taking up two seconds of your time. I know we spoke yesterday and I think the way we left it was, you know, you were saying you didn't want anything done, but then you kind of wish that there would be a brandishing charge, and I just wanted-

**A:** Yeah.

**Q:** -to revisit that. So there, there is no such thing as, as a brandishing charge. So I think the way we're gonna leave it is, it's not, it's not my job, you know, to really, uh, I don't say yes, there was a violation, no, there wasn't. So I think the way that this is gonna proceed is we're just gonna submit our reports, uh, to the prosecutor and then, right, it's their job to decide, uh, really what happens from there, if that makes sense to you.

**A:** Uh, yeah. You don't think there's gonna be any like, retaliation or anything do you?

**Q:** What? I get, what do you mean retaliation?

**A:** Like if, like, if he is upset with me, I mean, if he's a federal agent, then he can find out my information. Right?

**Q:** Oh, well, I mean, if he, if, if he would do that, number one, uh, you let me know. Uh, and number two, that, I mean, a person can't be that dumb to do that. I, I would hope not. Uh, you know-

**A:** Yeah.

**Q:** No, I would, uh, I would not at all be concerned about that. Uh, I mean, if something like that were to happen, certainly there are, there are steps in place to deal with, with that sort of thing. So I would not at all-

**A:** Yeah.

**Q:** -be concerned, uh, about that.

**A:** Okay. Yeah. I mean, I, I guess I just wanna be done with it.

State v. Gregory Donnell Morgan
MNCIS No: 27-CR-26-9656
PCN: 26A01457
CCN: 26401115
*Follow-up call w.* <span>Victim 1</span>

**Q:** Yeah.

**A:** Um, so if it, you know, I, I, I, I don't know what you're capable of doing or not, but I mean, if we just skip it-

**Q:** Yeah, I can-

**A:** That's fine with me.

**Q:** I can run that up the flag pole. I can let, I can let my boss know that's your wishes, that you just wanna move on and not anything done.

**A:** Mm-hmm.

**Q:** Uh, unfortunately we're kind of put in a tough situation as well. Uh, right? Because, you know, let's, let's say it what it is. This involves another law enforcement, uh, agency and a year down the road, you know, could something be said that, oh, we didn't do anything about it. Right? I'm not saying you would-

**A:** Yeah.

**Q:** -ever make that claim. Right? But at the end of the day, at the end of the day, we're just here to document what happened and then, right? We have to pass it on so we can let the prosecutor know your wishes, which, right, they take into account most of the time. Right?

**A:** Okay.

**Q:** Because, because as we spoke about yesterday, I mean, you and Victim 2 would have to be the ones testifying.

**A:** Yeah.

**Q:** So, so just so we're on the same page, uh-

**A:** Sounds good. I, I would appreciate if you relayed my wishes, I guess.

**Q:** Yeah. That you don't want anything done with it, but you understand that our hands are kind of tied and, you know, that's where we're at.

**A:** Yeah.

**Q:** So-

**A:** I understand.

2

State v. Gregory Donnell Morgan
MNCIS No: 27-CR-26-9656
PCN: 26A01457
CCN: 26401115
*Follow-up call w.* █████

**Q:** No, uh, you know, again, you know, we had a great conversation yesterday. I think it's best handled that way, but, you know, unfortunately, that's kind of out of my hands, you know, and, and, uh, that's not specifically my job to decide that, so but-

**A:** Okay.

**Q:** Yeah. No, I appreciate you understanding, and again, you obviously have my number. Uh, this is my, this is my cell.

**A:** Okay.

**Q:** So, uh, you know, if you ever have any questions or anything comes up, feel free to give me a call.

**A:** Sounds good. I appreciate it.

**Q:** All right. Have a good weekend.

**A:** You too.

**Q:** Bye.

**A:** Bye.

**END OF TRANSCRIPT**