**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
Criminal No. 26-CR-112-NEB

**STATE OF MINNESOTA,**

**v.**

**GREGORY DONNELL MORGAN, JR.,**

***Defendant.***

**RESPONSE TO THE STATE OF MINNESOTA'S MOTION REQUESTING USE IMMUNITY**

## INTRODUCTION

The United States files this response to the State's motion requesting use immunity. Dkt. 47. The Court has called for responses to the motion, Dkt. 48, and the United States has a strong interest in preserving its unique, congressionally granted ability to request use immunity for witnesses in federal proceedings. The State's contention that it can compel testimony under the federal immunity statutes, 18 U.S.C. §§ 6001–03, is simply wrong. Nor can the Court use any inherent authority to grant use immunity. That leaves Minnesota Statute § 609.09. Whether the Court can compel testimony under that state statute presents a difficult question the Court need not answer at this time because neither the procedural nor substantive requirements of the statute have been met.[1]

The State's motion should be denied.

## ARGUMENT

### A. The State cannot use the federal immunity statutes.

The federal immunity statute, 18 U.S.C. § 6003, provides:

> (a) In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a court of the United States or a grand jury of the United States, the United States district court for the judicial district in which the proceeding is or

[1] This statement is filed jointly by the Department of Justice's Civil Division and the United States Attorney's Office for the District of Minnesota. The United States Attorney's Office has an interest in responding to this matter because of the State's arguments that federal use immunity can be provided by anyone other than the United States Attorney. The United States Attorney's Office's involvement in this filing is not intended as a threat of prosecution or an attempt to intimidate any witness. The discussion of probable cause and federal crimes relates solely to the standard under the federal officer removal statute, the issue for which the United States filed its Statement of Interest. *See infra* Section D.

> may be held shall issue, *in accordance with subsection (b) of this section, upon the request of the United States attorney for such district*, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of this title.
>
> (b) *A United States attorney may, with the approval of the Attorney General*, the Deputy Attorney General, the Associate Attorney General, or any designated Assistant Attorney General or Deputy Assistant Attorney General, request an order under subsection (a) of this section when *in his judgment–*
>
> (1) the testimony or other information from such individual may be necessary to the public interest; and
>
> (2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.

(emphases added). Section 6003 authorizes only "the United States attorney," with proper approval authority, to request an order to compel testimony under a grant of immunity, and the district court may grant the order only "in accordance with subsection (b)" and "upon the request of the United States attorney." *Id.* § 6003(a).

Neither the State of Minnesota, the Hennepin County Attorney's Office, nor the nonprofit signatories to the State's motion are a "United States attorney." Therefore, they cannot request any relief under 18 U.S.C. § 6003. *United States v. Doe*, 465 U.S. 605, 616–17 (1984) ("Congress expressly left this decision exclusively to the Justice Department."); *cf. Arizona v. Manypenny*, 451 U.S. 232, 243 n.18 (1981) ("[T]he statute does not speak in such terms . . . ."). Moreover, as the State admits, the United States Attorney declined the State's request to grant use immunity, resolving the question of whether 18 U.S.C. § 6003 may be triggered here.

**B. The Court lacks inherent authority to confer use immunity.**

Citing cases discussing the Court's inherent power to "ensure fair trials" in other contexts, the State argues that the Court—at the State's request—can use its "inherent supervisory authority" to provide T.B. and B.A. with use immunity. Dkt. 47 at 10-12. The State's theory lacks support in precedent and would amount to a judicially crafted end-run around the federal immunity statutes. 18 U.S.C. §§ 6001–03. As numerous courts have confirmed, "As Congress has given the power to immunize a witness solely to the Executive Branch, it is not a power courts can exercise." *United States v. Quinn*, 728 F.3d 243, 254 (3d Cir. 2013); *id.* at 260–61 ("[J]udicial use immunity impinges on the separation of powers between the Executive and Judicial Branches of our Federal Government. The grant of witness immunity, reserved by statute to the Executive Branch, does not also reside with the Judiciary."); *United States v. Elbaz*, 52 F.4th 593, 605 (4th Cir. 2022) ("District courts lack the inherent power to grant immunity. The power to seek witness immunity is conferred by Congress exclusively on the Executive for its discretionary use." (internal citation omitted)); *United States v. Lenz*, 616 F.2d 960, 962 (6th Cir. 1980) ("[C]ourts have no inherent power to grant immunity."); *United States v. Taylor*, 728 F.2d 930, 934 (7th Cir. 1984) ("Congress has delegated the authority to grant use immunity solely to the executive branch of government."); *cf. United States v. Capozzi*, 883 F.2d 608, 614 (8th Cir. 1989) ("We decline to follow *Smith* and reassert our doubt that the Court has the power to order such a grant of judicial immunity."); *McKenzie v. State*, 872 N.W.2d 865, 874 (Minn. 2015) ("We have interpreted the power to grant immunity narrowly, rejecting the notion that the court has an inherent

power to order immunity."). For the Court to grant immunity on its own authority would be a usurpation of that power.

### C. The Court should decline to compel testimony and grant use immunity under Minnesota Statute § 609.09.

Minnesota Statute § 609.09 contemplates immunity "[i]n any criminal proceeding, . . . if it appears a person may be entitled to refuse to answer a question or produce evidence of any other kind on the ground that the person may be incriminated thereby[.]" The statute provides "if the prosecuting attorney, in writing, requests the [court] to order that person to answer the question or produce the evidence, the judge, after notice to the witness and hearing, shall so order if the judge finds that to do so would not be contrary to the public interest and would not be likely to expose the witness to prosecution in another state or in the federal courts," and that, in such circumstances, "if, but for this section, the witness would have been privileged to withhold the answer given . . . , no testimony . . . compelled under the order . . . may be used against the witness in any criminal case[.]" *Id.* The statute therefore has at least three substantive requirements: (i) a written request from the prosecution for an answer to the question at issue; (ii) a judicial finding that compelling such testimony "would not be contrary to the public interest"; and (iii) a judicial finding that compelling such testimony "would not be likely to expose the witness to prosecution in another state or in the federal courts."

The State's motion does not satisfy the first or second requirements. The State's motion does not include a request that the Court compel T.B. and B.A. to testify, much less a concrete explanation of what the testimony would be about.

Without such a request and explanation, the Court cannot conclude that it would be in the public interest to compel testimony. *See State on Behalf of Windschitl v. Landkammer*, 217 N.W.2d 494, 499 (Minn. 1974) ("It is inconceivable that immunity would be recommended by the prosecutor and granted by the court without a thorough investigation of the witness to determine the extent of his involvement.").

But even setting aside that fundamental defect, it would be "contrary to the public interest" to confer use immunity in the removal hearing in these circumstances. The State argues that "both the State and the defendant seek their testimony." Dkt. 47 at 5. That broad statement does not address the specific issue before the Court, because the State appears only to seek the testimony for later proceedings that may not occur. *See id.* at 4 n.2. Only Defendant Officer Morgan seeks to use the testimony at the removal hearing, and the State makes no effort to explain why compelling that testimony would be in the public interest. In any event, more importantly, the State's own evidence—including the witnesses' own statements—already demonstrates that removal is appropriate. *See generally* Dkt. 26 (U.S. Stmt. of Interest). The Court need not have the witnesses at this hearing, let alone confront the complicated question of whether to compel testimony and grant use immunity.

**D. The United States filed its statement of interest to support removal.**

In arguing for the grant of use immunity, the State regrettably asserts that the United States' Statement of Interest "appear[s] designed to intimidate" witnesses and "seemingly threaten[s]" them with prosecution by explaining that the driver of the Cadillac engaged in conduct that created probable cause for a reasonable officer

to believe a potential violation of 18 U.S.C. § 111 occurred. *See* Dkt. 47 at 3, 8. As explained below, the United States strongly denies the State's implied accusation. Moreover, the State's arguments to support its implied accusation are unavailing and, at bottom, ignore what is apparent on the video, its own probable cause statement, and the criminal and removal laws.

The State's arguments that the United States "baselessly" asserted that probable cause existed all fail. *Id.* at 11. To start, only the facts prior to Officer Morgan's actions matter for the probable-cause determination, not whether he subsequently attempted to arrest the other driver or reported what he observed. And a review of those prior facts shows ample evidence supporting probable cause: The driver's reckless acts are on video, and the interference is confirmed by the driver and his passenger's own statements to police. *See* Dkt. 36 (U.S. Resp. to Witness Ltr.) at 2-3; Dkt. 2 (PC Stmt.) at 2-3. Moreover, the decision whether to arrest is discretionary, *cf. Avalos v. City of Glenwood*, 382 F.3d 792, 801 (8th Cir. 2004); *Brandon v. Lotter*, 157 F.3d 537, 541 (8th Cir. 1998); *Deuser v. Vecera*, 139 F.3d 1190, 1195 (8th Cir. 1998); and the State does not explain how Officer Morgan could have safely effectuated an arrest from his unmarked rental car. As indicated by his statements to investigators, Officer Morgan quickly did what he could to safely return to his duties. *See* Dkt. 29-2 (MN State Trooper Interview) at 10 (lines 376-78) (Officer

Morgan stating he "just want[ed] to be safe" and "clear" the situation "[s]o we can go about our day and continue on our duty. That's it.").[2]

Contrary to the implication of the State's assertions, the United States does not raise the issue of whether probable cause existed to believe a federal criminal violation occurred in an attempt to intimidate anyone. Nor does it do so to "frustrate these proceedings." Dkt. 47 at 3, 11. The probable cause issue, while not the sole basis for removal (*see* 28 U.S.C. § 1442(a), (c)(1) and (2)), is directly relevant to both tests under the removal standards: whether the defendant acted under color of his office and whether he has a colorable federal defense, such as Supremacy Clause immunity. *See* Dkt. 26 at 8-22. Indeed, federal law authorizes immigration agents to respond to crimes committed in their presence. 8 U.S.C. § 1357(a)(5). And agency policy and Supreme Court case law governing the analysis of not just arrests, but also of other seizures, focuses on the existence of a crime, its severity, and probable cause. *See* Dkt. 26 at 10-11 (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985); and DHS policy).

These laws and policies all indisputably go to whether Officer Morgan acted within the color of his federal office and whether his conduct was justified—issues to be addressed at the upcoming removal hearing. *See, e.g.*, 28 U.S.C. § 1442(a)(1); *Texas v. Kleinert*, 855 F.3d 305, 312-14 (5th Cir. 2017). For example, 28 U.S.C. § 1442(c)

---

[2] Nor does it matter (Dkt. 47 at 1, 11, n.3) that no federal investigation or prosecution has commenced. Probable cause is necessary but not always sufficient for the initiation of criminal proceedings. Regardless, the United States has broad discretion on when to bring charges.

provides that a law enforcement officer in a prosecution "shall be deemed to have been acting under the color of his office if the officer—(1) protected an individual"—such as Officer Morgan's partner in the car—"in the presence of the officer from a crime of violence." *Cf. Georgia v. Heinze*, 637 F. Supp. 3d 1316, 1324–25 (N.D. Ga. 2022) (officers satisfied color of office requirement because—crediting defense's theory—defendants fired weapons after suspect pointed gun at them, violating section 111). In sum, the issue of whether probable cause for a federal crime existed is directly relevant to the existence of the Court's removal jurisdiction. The United States firmly disclaims any intent at intimidation.

**CONCLUSION**

The Court should decline to grant use immunity and should retain jurisdiction of this prosecution under 28 U.S.C. § 1455.

Dated: August 18, 2026

DANIEL N. ROSEN
United States Attorney

DAVID W. FULLER
Civil Chief

U.S. Attorney's Office
District of Minnesota
600 U.S. Courthouse
300 South 4th Street
Minneapolis, MN 55415
(612) 664-5600

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JONATHAN D. GUYNN
Deputy Assistant Attorney General
Torts Branch

PAUL E. WERNER
Assistant Director
Civil Division, Torts Branch

SIEGMUND F. FUCHS
Senior Trial Counsel
Civil Division, Torts Branch

/s/ Paul C. Quast
Paul C. Quast
Colorado Bar No. 49154
Senior Trial Attorney
/s/ Jonathan R. Myers
Jonathan R. Myers
D.C. Bar No. 1601183
Trial Attorney
U.S. Department of Justice
Constitutional Torts Staff
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044-7146
202-256-9250
paul.c.quast@usdoj.gov
jonathan.r.myers@usdoj.gov

*Attorneys for Interested Party*
*United States of America*